UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RR and WR, individually and as next Friends of MR, | : : | |
| Plaintiffs, | : : | CIVIL ACTION NO. |
| v. | : : : : | |
| GREENWICH BOARD OF EDUCATION, | : | |
| Defendant. | : | JUNE 24, 2021 |

COMPLAINT

I.     **PRELIMINARY STATEMENT**

1. This civil action is an appeal of the May 12, 2021, Final Decision and Order ("Final Decision") 20-0374 (consolidated with 21-0035 and 21-0101), of State of Connecticut Special Education hearing officer Susan Dixon (the "Hearing Officer" or "IHO"), a copy of which is annexed hereto as Attachment 1. This appeal is brought pursuant to, and in accordance with, the Individuals with Disabilities Education Act 2004 ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*; C.G.S. § 10-76h(d)(4). In this appeal, Plaintiffs RR and WR, individually and as Parents of MR, a Minor student with multiple disabilities, seek reversal of the IHO's Final Decision, in which the IHO found, contrary to the law and the evidence in the record, against Student MR and her Parents on all claims.

2. The Plaintiffs further seek a determination for the 2019-2020 school year, that

   a. Defendant Board committed procedural violations that rose to the level of a denial of FAPE to the Student;

   b. Defendant Board denied MR a FAPE by failing to have an IEP in place on her first day of school.

    c.  Defendant Board denied MR a FAPE because the IEP it belatedly offered to MR was not appropriate and was not reasonably calculated to provide her educational benefit.

    d.  The Plaintiffs proved the foregoing, by a preponderance of the evidence, and further proved, by a preponderance of the evidence, that the Plaintiffs' unilateral placement of the Student at WPS was appropriate, and that the Defendant Board is responsible for reimbursing the Plaintiffs' the cost of placing the Student at W School for the 2019-2020 school year, and that MR and her Parents are entitled to compensatory education.

3. The Plaintiffs further seek a determination for the 2020-2021 school year, that

    a.  Defendant Board committed procedural violations that rose to the level of a denial of FAPE to MR;

    b.  Defendant Board Denied MR and her Parents a FAPE as the IEP it offered to MR was not appropriate and was not reasonably calculated to provide her educational benefit.

    c.  The Plaintiffs proved the foregoing, by a preponderance of the evidence, and, MR and MR's Parents proved, by a preponderance of the evidence, that the Plaintiffs' unilateral placement of the Student at W School was appropriate, and that the Defendant Board is responsible for reimbursement of the Parent's unilateral placement of the Student at W School for the 2020-2021 school year, including 2020 ESY.

4. The Final Decision contravenes established state and federal law; improperly relies on after-acquired evidence and retrospective analysis; exceeds the Hearing Officer's

authority; is clearly erroneous in view of the reliable, probative and substantial evidence in the record; contains mistakes of law; and is arbitrary, capricious, or an abuse of discretion.

5. The Defendant also violated MR's civil rights under the Americans with Disabilities Act ("ADA") by failing to reasonably accommodate her needs associated with her documented disabilities, and by excluding her from participation from and the opportunity to benefit from the programs and services it offered nondisabled students. Instead of reasonably accommodating her disabilities, the Board and its personnel blamed MR for her inability to enter the school building due to fear and anxiety, to keep up with directions, remain organized, and to complete assignments. The Hearing Officer's Final Decision similarly discriminated against and disregarded the Student's disabilities, even accusing the Student of being "uncooperative," and dismissing her emotions and fears as irrational and baseless. Final Decision at 20. Instead of using trauma-informed and other commonly accepted approaches to deal with MR's disability-related school refusal, the Board refused to find a way to ensure MR could access its programs and services that would accommodate her anxiety-related disability. Instead, they discriminated against her and exacerbated her disability by punishing her for something outside of her control.

## II. JURISDICTION

6. This Court has jurisdiction pursuant to 20 U.S.C. § 1415(i)(2)(A) and 28 U.S.C. §§ 1331 and 1367.

7. This Court has jurisdiction over this action without regard to the amount in controversy.

8. The Plaintiffs have exhausted administrative remedies and are the aggrieved parties within the meaning of 20 U.S.C. § 1415(i)(2), (i)(3)(A), (i)(3)(B)(i)(I), and 20 U.S.C. § 1415(f) & (g).

9. Venue in this District is proper under 28 U.S.C. § 1391(b), as all parties reside, or are located in, the State of Connecticut.

### III.   PARTIES

10. MR and her Parents, RR and WR, are residents of Greenwich, Connecticut. MR is a student of the Board. MR is, and at all times relevant to this proceeding was, eligible for special education and related services pursuant to the IDEA under that statute's disability classification of Other Health Impairment ("OHI") – Attention Deficit Disorder / Attention Deficit Hyperactivity Disorder ("ADD/ADHD"). MR has additional documented disabilities, including, non-verbal learning disability. anxiety, and Specific learning disability with 1) impairment in reading comprehension and 2) impairment in written expression: clarity and organization of written expression.

11. She is a "qualified individual with a disability" protected by Title II of the ADA. *See* 42 U.S.C. § 12132.

12. This Complaint is brought on behalf of MR by and through her Parents.  MR and her Parents are not expressly named herein by their legal names, nor further identified by their actual address within the State of Connecticut, because of the privacy guaranteed by the IDEA, 20 U.S.C. § 1417(c), and The Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g and 34 C.F.R. § 99.  The same is true of the parental placement, which is only identified as "W School".

13. The Defendant, Greenwich Board of Education (the "Board"), is a local board of education organized under the laws of the State of Connecticut. At all times relevant hereto, the Board has been the local education agency (the "LEA") (within the meaning of 20 U.S.C. § 1401(19)) responsible for providing MR with special education and related services under IDEA.

14. The Board is a recipient of federal financial assistance and, therefore, must comply with the provisions of that statute, including the obligation to provide a free and appropriate education to students eligible under the IDEA.

15. The mechanism for an LEA to provide a student who is eligible under the IDEA to a free and appropriate education is an Individual Education Program ("IEP"). *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 482 (2d Cir. 2002).

16. Connecticut must deliver each disabled child a free appropriate public education pursuant to the child's IEP. Connecticut accomplishes this through its State Department of Education and the Board of Education for each school district in the State, each of which is responsible for developing an IEP for disabled children in its district. 20 U.S.C.S. § 1401(19)(A), (32); Conn. Agencies Regs. § 10-76d-11.

17. Parents may challenge a proposed IEP by filing a complaint with the state education agency, which is resolved through an impartial due process hearing. 20 U.S.C. § 1415(b)(6), (f); Conn. Gen. Stat. § 10-76h. ("Due Process").

18. A party aggrieved by the Final Decision and Order of a Due Process Hearing Officer may challenge that Decision in a federal district court. 20 U.S.C. § 1415(i)(2).

19. Standard of Review, De Novo - In considering an Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 *et seq.*, claim, a district court must engage in an independent review of the administrative record and make a determination based on a preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(C)(iii).

20. The Defendant is, and at all relevant times has been, a public entity covered by Title II of the ADA. 42 U.S.C. § 12132.

21. Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see also* 28 C.F.R. § 35.130.

22. The ADA makes it unlawful for a public entity to "[d]eny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service," or "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service" that is not equal to that afforded to others[.]" 28 C.F.R. § 35.130(b)(1)(i)–(ii).

### IV.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

23. At all times relevant hereto including the present, MR has been a resident of Greenwich, Connecticut, living with her Parents.

24. On February 24, 2020, the Parents filed a Request for a Due Process Hearing with the Connecticut State Department of Education ("CSDE"), (20-0374).

25. On July 28, 2020, the Parents filed a Request for a Due Process Hearing with the CSDE, (21-0035).

26. On September 6, 2020, the Parents filed a Request for a Due Process Hearing with the CSDE, (21-0101).

27. All three Hearing requests, which asserted a denial of FAPE occurring during the 2019-20 and the 2020-21 school years, were consolidated.

28. Due to various Executive Orders issued by Governor Lamont during and since March 2020, suspending both administrative and judicial proceedings for at least ninety (90) days due to the declaration of the COVID-19 heath emergency, coupled with tropical storm related damage during August 2020, these proceedings belatedly commenced on September 16, 2020, and concluded on February 24, 2021. Counsel for both parties stipulated that they

agreed to waive any claims relative to the timeliness of the issuance of the Final Decision, given the circumstances created by the declaration of the COVID-19 health emergency and resulting Executive Orders, scheduling issues, and delays associated with inclement weather.

29. The Parties submitted Post-Hearing Briefs on or about April 14, 2021.

30. The IHO issued her Final Decision and Order on May 12, 2021.

## V. CAUSE OF ACTION: IDEA DENIAL OF FAPE

31. The previous paragraphs are incorporated herein by reference.

32. The Board has the burden of proving the appropriateness of the Student's program by a preponderance of the evidence. R.C.S.A. § 10-76h-14. A school district provides FAPE if it is in compliance with the procedural requirements of the IDEA, and the IEP developed is reasonably calculated to enable the child to receive educational benefit. *Board of Ed. v. Rowley,* 458 U.S. 176, 206-07 (1982). "The district is required to create an IEP that must aim to enable the child to make progress; the essential function of an IEP is to set out a plan for pursuing academic and functional advancement. And the degree of progress contemplated by the IEP must be appropriate in light of the child's circumstances, which should come as no surprise. This reflects the focus on the particular child that is at the core of the IDEA, and the directive that States offer instruction "*specially* designed" to meet a child's "*unique* needs" through an "[*i*]*ndividualized* education program." *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 991, 197 L. Ed. 2d 335 (2017) (internal quotation marks omitted) (emphases in original). The adequacy of a given IEP turns on the unique circumstances of the child for whom it was created.

33. Tuition reimbursement may be awarded if the Board fails to prove that it offered a FAPE to the Student before the Parents placed him or her in a private institution, and the Parents prove that the private placement is appropriate. 34 C.F.R. § 300.148(c).

Reimbursement may be ordered where the district-offered education program or placement, or the IEP, is inappropriate (Prong I), the parent-selected education program or placement is appropriate (Prong II), and equitable considerations support the Parents' claim (Prong III). *Sch. Comm. of Burlington v. Dep't of Educ.,* 471 U.S. 359 (1985); *Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993).

34. The analysis of the appropriateness of the unilateral placement is different from that of the appropriateness of the IEP. The Second Circuit set forth that "no one factor is necessarily dispositive in determining whether parents' unilateral placement is reasonably calculated to enable the child to receive educational benefits", examining grades, test scores, and regular advancement, which may constitute evidence that a child is receiving educational benefit. *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 108 (2d Cir. 2007). Courts assessing the appropriateness of a unilateral placement consider the "totality of the circumstances". *Id.*

35. So long as the educational instruction at the parent placement is "specially designed to meet the unique needs of a [disabled] child" and it is "supported by such services necessary to permit the child to benefit from instruction," it is appropriate. *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 836 (2d Cir. 2014) (quoting *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 365 (2d Cir. 2006)). Parents are not required to prove that the "private placement furnishes every special service necessary", especially when Parents are providing such services privately. *Id.*, at 839 (quoting *Frank G.* at 365).

36. Finally, Parents are not subject to the same mainstreaming, or LRE requirements as the Board. *C.L.,* 744 F.3d at 837; *see Frank G.,* 458 F.3d at 364.

37. The third prong of the *Burlington-Carter* analysis examines whether the Parents properly establish that equitable considerations favor reimbursement. The IDEA provides that reimbursement may be reduced or denied: (1) when Parents fail to raise the

appropriateness of an IEP in a timely manner; (2) when Parents fail to make their child available for evaluation by the Board; or (3) upon a finding of unreasonableness with respect to the actions taken by the Parents. 20 U.S.C. § 1412(a)(10)(C)(iii).

38. To merit deference, the IHO's decision must be "thorough and careful." The quality of the decision can be judged on factors such as whether it is "well-reasoned" and "based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 189 (2d Cir. 2012) (internal quotation marks omitted); *L.O. v New York City Dep't of Educ.*, 822 F.3d 95, 109 (2d Cir. 2016). To merit deference, the IHO's factual findings must be reasoned and supported by the record.

39. The IHO's decision was neither thorough and careful, nor was it well reasoned and supported by the law and the evidence. The IHO ignored evidence, and assumed facts not in evidence, in order to reach the conclusion that the Board offered MR a FAPE. The IHO more often than not failed to cite to legal authority and precedent that support her conclusions.

40. The IHO's Findings of Fact and Conclusions of Law go against the great weight of the evidence and the review standards set forth by the Second Circuit. This Court, pursuant to the IDEA, 20 U.S.C. § 1415, has broad remedial powers to take appropriate action.

41. The IHO committed error when she concluded that the Board offered MR a FAPE for the 2019-2020 school year.

   a) Despite the Board incontrovertibly having violated black-letter law, *see* 34 C.F.R. § 300.323(a) ("At the beginning of each school year, each public agency shall have an IEP in effect for each child with a disability within its jurisdiction."); *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186 (2nd Cir. 2005) ("school districts must … ensure that a child's IEP is in effect by the beginning of the school year and that the

9

parents are provided a copy."), the IHO disregarded the Board's clear failure in August 2019 to either implement MR's old IEP from New York or create and put into effect a new IEP at the beginning of the school year. Without a valid IEP in place, MR was denied FAPE. Indeed, the Hearing Officer misconstrued *Cerra* and used it to argue that the Board did not have to produce MR's IEP "at the time parents demand," Final Decision at 19, suggesting that the Parents' expectation that the Board would comply with the straightforward regulatory requirement to have an IEP in place on the first day of school was somehow an extraordinary and unreasonable "demand."

b) IHO ignored the Board's procedural violation in August 2019, when it failed to ensure that MR's IEP was in effect by the beginning of the school year and its failure to provide the parents with a copy of MRs IEP at the same time.

c) The Board's procedural violation in not having an IEP in place for MR on her first day of school resulted in a substantive denial of FAPE. The Board excluded the student and her parents not only from the process of developing the IEP it intended to implement on her first day in her new school, it also kept the details of the program from the student and her parents.

d) The IHO ignored the uncontroverted testimonial evidence of the adverse impact on MR's ability to access her education in the 12 days that she floundered in the new school without any IEP. The IHO falsely assumed, absent such evidence in the record, that the Parents and the Student understood that the Board would implement the Student's "unchallenged IEP from New York in place," which they in fact did not do.

e) The IHO further concluded, absent evidence in the record, "that the CMS staff made diligent efforts from the beginning to adopt and improve the former IEP, increase her

motivation to attend school, refine her goals and objectives and otherwise encourage Student's success. I find that the issues that arose during the approximately six week period that Student was enrolled at CMS were all addressed appropriately."

f) The IHO ignored the uncontroverted testimony of the Student's immediate emotional decline in the first two weeks of school. The IHO ignored the evidence in the record of the Student's anxiety and history of school refusal.

g) The IHO's statement that "The Student attended only 13 full school days before the Parents peremptorily removed the Student from the school" actually supports the evidence that the Board's belated attempts to engage the Student failed miserably.

h) The IHO also disregarded the uncontroverted testimony about MR's rapid emotional decline during the first two weeks of school. The IHO ignored the professional testimony and record evidence about her anxiety and other significant emotional struggles and history of school refusal, and placed the blame on the Student for being unable to enter the school building to access services that might have helped her.

i) The IHO made an error in law and in fact when she concluded that "despite the best efforts of the staff", the student was "uncooperative." Final Decision, p. 19. "The facts showed, however, that the Student was at times uncooperative with the teachers and unable to keep up with directions, organization and completion of assignments, despite the best efforts of the staff. (FF 60, 65, 87, 90-91, 94)

j) Much of the evidence cited by the IHO to support the Board's program, in fact, demonstrated the failure of the Board's program and the inappropriateness of the IEPs: "In the weeks following the start of school, Student was absent or tardy with increasing and alarming frequency. (FF 56, 66-7) When she did arrive at school late, any benefits of her morning counseling classes and supports were completely

11

negated. Notably, she missed over half of these sessions in the month of September 2019. (FF 84)"

k) The IHO asserted, without evidence, "that the CMS staff made diligent efforts from the beginning to adopt and improve the former IEP, increase her motivation to attend school, refine her goals and objectives and otherwise encourage Student's success." With no record support, the Hearing Officer concluded that "the issues that arose during the approximately six week period that Student was enrolled at CMS were all addressed appropriately."

l) The IHO's acknowledgement that MR was able to attend "only 13 full school days before the Parents peremptorily removed the Student from the school," Final Decision at 19, in fact makes salient that the Board's minimal and half-hearted attempts to accommodate, provide meaningful access, and deliver special education services to MR the Student failed miserably.

m) Moreover, the IHO's characterization of the Parents' decision to exercise their explicit right under the IDEA to provide the Board with 10 business days' notice of their intent to place the Student in a private program and to seek reimbursement therefor, *see* \_\_\_\_, as "peremptorily remov[ing] the Student from the school," Final Decision at 19, evinces the Hearing Officer's bias against the Parents in this case. The uncontroverted evidence in the record includes the Parents 10-Day Notice Letter that they timely provided to the Board in October 2019.

n) The IHO failed to accurately identify and address the Board's multiple procedural violations, and thus failed to determine that those violations amounted to a denial of FAPE.

  i) The IHO erred in her application of the law to the facts regarding the Board's legal obligation to provide MR with a FAPE in the Least Restrictive Environment ("LRE"), misapprehending the Board's obligation. If the placement fails to provide a meaningful benefit to the student and a more restrictive program is likely to provide that benefit, the student is entitled to placement in that more restrictive program. *P. v. Newington Bd. of Educ.*, 51 IDELR 2 (2d Cir. 2008).

42. The IHO committed error when she concluded that the Board provided MR a FAPE for Extended School Year ("ESY") 2020.

43. The IHO committed error when she concluded that the Board offered MR a FAPE for the 2020-2021 school year.

  a) The IHO used the Cerra case and the applicable regulations to support the Board's right to convene the Student's Annual Review on August 26, 2020, one month after it convened a PPT meeting on July 21, 2020. The IHO claimed that the Board did not violate the Student's and the Parents' procedural rights because the Board had convened the July 21, 2020 PPT "which is considered a 'bridging' meeting and as such, required no advance draft. This meeting was limited to a 'review and revise' of the current IEP in place for special education students who will be moving into high school, because the classes and services are substantially different in high school." Final Decision, p. 19

  b) The IHO disregarded the Parents' and the Student's right to meaningfully participate in each and every PPT meeting. She inappropriately concluded, contrary to the evidence, that "By that time, the Student already had been at [W] for over six months and not planning to attend any District school. (FF 193-204)" Final Decision, p. 19

  c) The IHO's determination that the August 26, 2020 IEP developed was reasonably

calculated to provide MR with educational benefits likely to produce progress and not regression should be afforded no deference.

44. The IHO misrepresented the law when, regarding an analysis of the parental placement, she asserted: "If the Board failed to offer a program that provided FAPE, Parents would be entitled to reimbursement, but only if the parents' private placement was appropriate to the child's needs ***and in the least restrictive environment***." Final Decision, p. 18 (emphasis, bold added) Parents are not subject to the same mainstreaming, or "least restrictive environment" ("LRE") requirements as the Board. *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 836-837 (2d Cir. 2014); *C.L.*; *see Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 364-365 (2d Cir. 2006)

If the placement fails to provide a meaningful benefit to the student and a more restrictive program is likely to provide that benefit, the student is entitled to placement in that more restrictive program. *P. v. Newington Board of Education*, 51 IDELR 2 (2d Cir 2008).

### VI.   CAUSE OF ACTION: VIOLATIONS OF THE ADA

45. Plaintiffs incorporate the allegations in the preceding paragraphs, as if alleged herein.

46. MR is a "qualified individual with a disability" protected by Title II of the ADA. *See* 42 U.S.C. § 12132.

47. Defendant is, and at all relevant times has been, a public entity covered by Title II of the ADA. *Id*.

48. Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see also* 28 C.F.R. § 35.130.

49. Moreover, the ADA makes it unlawful for a public entity to "[d]eny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service," or "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service" that is not equal to that afforded to others[.]" 28 C.F.R. § 35.130(b)(1)(i)–(ii).

50. A public entity must not "provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others." *Id.* § 35.130(b)(1)(iii).

51. A public entity must also "make reasonable modifications" to its services and activities "when the modifications are necessary to avoid discrimination." *Id*. § 35.130(b)(7)(i).

52. The Board is required to comply with its obligations under the ADA independent of its obligation to provide students with disabilities a FAPE in the LRE under the IDEA. In other words, a school district can provide FAPE in the LRE and be in full compliance with the IDEA, but still be found to have violated a student's civil rights under the ADA. *See Fry v. Napoleon Community Schools*, 137 S. Ct. 743, 748 (2017) ("nothing in the IDEA restrict[s] or limit[s] the rights [or] remedies that other federal laws, including antidiscrimination statutes, confer on children with disabilities") (internal quotations omitted).

53. By unnecessarily denying MR reasonable disability-related accommodations and by blaming her and her disabilities for her failing grades, Defendant discriminated against MR on the basis of her disabilities, and created a hostile learning environment that denied MR the right to participate in and receive the benefits, services, or opportunities the Board

offers to nondisabled students. The Board refused to provide the supports MR needed to fully access those opportunities, blaming her disability when she didn't succeed.

### VII. PRAYER FOR RELIEF

54. Reverse the IHO's Final Decision and Order and hold that the Board did not offer MR a FAPE for the 2019-2020 school year;

55. Determine that W School was an appropriate placement for the Student's 2019-2020 school year;

56. Determine that the equities are in favor of the Parents and that they are, therefore, entitled to tuition reimbursement and related expenses for the Student's placement at W School for the 2019-2020 school year.

57. Reverse the IHO's Final Decision and Order and hold that the Board did not offer MR a FAPE for the 2020-2021 school year,

58. Determine that W School was an appropriate placement for the Student's 2020-2021 school year;

59. Determine that the equities are in favor of the Parents and that they are, therefore, entitled to tuition reimbursement and related expenses for the Student's placement at EHS for the 2020-2021 school year.

60. Reverse the IHO's Final Decision and Order and hold that the Board did not *offer* MR a FAPE for ESY 2020;

61. Reverse the IHO's Final Decision and Order and hold that the Board did not *provide* MR a FAPE for ESY 2020;

62. Award the Parents reimbursement for the costs associated with their unilateral placement of MR at W School for each of the 2019-2020, 2020-2021 SYs, including but not limited to tuition and related expenses;

63. Determine that the Plaintiffs are the prevailing party;

64. Find and declare that Defendant has discriminated against MR on the basis of her disabilities in violation of Title II of the ADA by excluding her from participation in and denying the benefits of a public education;

65. Find and declare that Defendant has discriminated against MR on the basis of her disabilities in violation of Title II of the ADA by denying her equal opportunity to participate in the benefits provided by Defendant that are afforded to students without disabilities;

66. Find and declare that Defendant has discriminated against MR on the basis of her disabilities in violation of Title II of the ADA by failing to provide her reasonable modifications;

67. Order Defendant to develop and implement a Response to Intervention Program, to include PBIS and trauma informed practices, positive educational and preventive practices and services, that provides an effective evidence-based district-wide classroom management and behavioral supports system to prevent discrimination against students with anxiety-related disabilities;

68. Award costs and reasonable attorneys' fees, including litigation expenses, as provided by law;

69. Award Plaintiffs compensatory damages; and

70. Provide such other relief as the Court deems appropriate.

    Respectfully submitted,
    Plaintiffs

    By:_____
    Gerry McMahon (ct24881)
    Law Offices of Gerry McMahon, LLC
    Ph. (203) 942-2430
    Alt.(203) 246-7273
    gerry.mcmahon@mcmahonspedlaw.net