UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RR AND WR, INDIVIDUALLY AND AS NEXT FRIENDS OF MR, | : : : | |
| *Plaintiffs*, | : | No. 3:21-cv-00873-JCH |
| v. | : : | |
| GREENWICH BOARD OF EDUCATION, | : : | |
| *Defendant*. | : | SEPTEMBER 17, 2021 |

**MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant Greenwich Board of Education submits this memorandum in support of its motion to dismiss Plaintiffs' Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12134 ("ADA") claim for lack of subject-matter jurisdiction and a failure to state a claim upon which relief can be granted.

As set forth more fully below, the Plaintiffs' ADA claim fails as a matter of law because: (1) Plaintiffs did not raise an ADA claim in the proceedings below and, thus, have failed to exhaust their administrative remedies; and (2) even if the Court concludes that the exhaustion requirement is satisfied, Plaintiffs have not alleged sufficient facts to support a plausible claim under the ADA.  In addition, this Court should strike Plaintiffs' request for relief for compensatory damages, as such damages are not available under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 et set. ("IDEA").

### I. PROCEDURAL AND FACTUAL BACKGROUND.

Plaintiffs filed their two-count Complaint on June 24, 2021. The Complaint is an appeal from a special education due process hearing before an Independent Hearing Officer ("IHO") appointed by the Connecticut Department of Education, after which the IHO determined that the defendant Greenwich Board of Education (the "Board") met its obligations under the IDEA. (*See* Complaint at ¶ 1). The Plaintiffs seek reversal of the IHO's May 12, 2021 Final Decision and Order, which found that the Board offered the Student an appropriate educational program in both the 2019-2020 and 2020-2021 school years. In the Plaintiffs' view, the Board failed to provide the Student with a Free Appropriate Public Education ("FAPE"), and they urge this Court to reverse the IHO's Final Decision and Order.[1] On appeal, Plaintiffs – for the first time – additionally allege that the Board violated Title II of the ADA.

### II. LEGAL STANDARD.

Rule 12(b)(1) permits the Defendant to challenge this Court's subject matter jurisdiction over the Plaintiffs' Complaint by motion to dismiss. *See* Fed. R. Civ. P. 12(b)(1). It is Plaintiffs' burden to prove the existence of subject-matter jurisdiction. *Id.* The Court, in determining if subject matter jurisdiction does exist, may refer to evidence submitted outside the pleadings. *Id.*

Pursuant to Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a claim for failure to state a claim upon which relief can be granted. The law and rules governing motions to dismiss brought pursuant to Rule 12(b)(6) are well-established. The Court generally must accept all factual allegations made in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 117 (2d Cir. 2003). "While a

---

[1] For purposes of this Motion to Dismiss, the Board accepts, as it must, Plaintiffs' version of the facts alleged in the Complaint. The Board expressly reserves its right to challenge the allegations in the Complaint at subsequent stages of this litigation.

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Perkins v. S. New Eng. Tel. Co.,* No. 3:07-CV-967, 2009 WL 350604, at *1 (D. Conn. Feb. 12, 2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Supreme Court has clarified:

> [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.
>
> ***
>
> While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id*. at 679 (internal citations omitted); *see also Twombly*, 550 U.S. at 565–66. Thus, the court "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. After discounting those allegations not entitled to the assumption of truth, the court can next proceed to consider whether those "factual allegations [entitled to the assumption of truth] ... plausibly suggest an entitlement to relief." *Id*. at 681.

3

## III. ARGUMENT

### I. The Second Count Must be Dismissed Because Plaintiffs Did Not Raise Any ADA Claim at the Administrative Level.

#### A. Failure to exhaust deprives the Court of jurisdiction over the ADA claim.

The IDEA requires participating states to provide disabled children with a FAPE, 20 U.S.C. § 1412(a)(1)(A), it and sets forth an administrative mechanism for resolving disputes concerning whether a school has complied. *Id.* § 1415. To that end, the IDEA provides for an impartial due process hearing conducted by the state or local educational agency; *id.* § 1415(f); and the right to appeal the results to federal court. *Id.* § 1415(i)(2). The IDEA also requires parties to use these procedures whenever they seek relief "available under this subchapter" even if they are pursuing relief under other federal laws. *Id.* § 1415(*l*). In that regard, the statute provides in full:

> Rule of construction. Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, **except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter**.

(Emphasis added). *See also* 34 CFR § 300.516(e) (same).

As relates to the exhaustion requirement, the Second Circuit has made clear that:

> [P]laintiffs must exhaust administrative remedies under the IDEA "whenever they assert claims for relief available under the IDEA, regardless of the statutory basis of their complaint," and that the failure to do so deprives the court of subject-matter jurisdiction. *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245–46 (2d Cir.2008) (emphasis in original); see 20 U.S.C. § 1415(l) (requiring IDEA exhaustion before filing claims under other federal statutes to extent relief sought "is also available under" IDEA); *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 488 (2d Cir.2002) (applying IDEA exhaustion requirement to ADA, Section 504, and Equal Protection claims). Thus, if the "theory" behind a claim relates to the "education of disabled children," IDEA exhaustion is required unless plaintiffs demonstrate that their failure to exhaust should be excused. *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d at 481, 487–88.

*L.K. v. Sewanhaka Cent. High Sch. Dist.*, 641 F. App'x 56, 57 (2d Cir. 2016).

While the Plaintiffs here did pursue their IDEA claim through the administrative process, they have not exhausted their putative ADA claim. In fact, they never mentioned any such claim in their various hearing demands. The U.S. Supreme Court has recently provided guidance on how to determine whether exhaustion is required in when an ADA claim is brought in connection with an education-related dispute. *See Fry v. Napoleon Cmty. Sch.,* 137 S. Ct. 743, 748 (2017). In *Fry*, the plaintiffs alleged that their daughter's school district discriminated against her in violation of the ADA, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and state law when it barred her from bringing her service dog to school to assist her with mobility and balance problems. 137 S. Ct. at 750-52. The Sixth Circuit held that Fry was required to exhaust her IDEA remedies, even though she filed non-IDEA claims. *Id.* at 752. The Supreme Court reversed, holding that "exhaustion is not necessary when the gravamen of the plaintiff's suit is something other than the denial of the IDEA's core guarantee—what the Act calls a 'free appropriate public education.'" *Id.* at 748 (quoting 20 U.S.C. § 1412(a)(1)(A)). In reaching this conclusion, the Court noted that the IDEA requires exhaustion only where the plaintiff "'seek[s] relief that is also available' under the IDEA." *Id.* at 752 (quoting 20 U.S.C. § 1415(l)). "[T]o meet that statutory standard, a suit must seek relief for the denial of a FAPE, because that is the only 'relief' the IDEA makes 'available.'" *Id.* The Court explained that "in determining whether a suit indeed 'seeks' relief for such a denial, a court should look to the substance, or gravamen, of the plaintiff's complaint." *Id.*

In this case, it is plain that the plaintiffs' suit seeks relief for the alleged denial of a FAPE; that is apparent from the face of the Complaint. *See* Complaint at ¶ 1. To the extent there

is any claim to the contrary, the Supreme Court in *Fry* set forth a roadmap for determining whether the gravamen of a complaint against a school concerns the denial of a FAPE:

> One clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination, can come from asking a pair of hypothetical questions. First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

*Fry*, 137 S. Ct. at 756.

Turning to the Complaint in the present matter, there is no dispute that the answer to both questions from *Fry* set forth above would be *no*. The Plaintiffs could not bring essentially the same claim against a public facility, such as a public theater or library. Similarly, an adult at the school – say an employee or visitor – could not have pressed essentially the same grievance. This is because the Complaint centers on the alleged denial of FAPE. *See, e.g.,* Complaint at ¶¶ 39-43 (repeatedly alleging denial of FAPE). In that regard, the Plaintiffs incorporate each and every allegation of their IDEA claim into the putative ADA claim. *See* Complaint ¶ 45. Instead of setting forth additional allegations to demonstrate that their ADA claim is something other than the denial of the IDEA's core guarantee, the Plaintiffs rely solely on threadbare recitals of legal conclusions. *See* Complaint ¶¶ 46-53.

Thus, in the light of the *Fry* analysis, there is no question that the Plaintiffs' suit seeks relief for a denial of FAPE. This required Plaintiffs to exhaust their ADA claim at the administrative level, and, because they failed to do so, their ADA claim must be dismissed.

## B. **Plaintiffs Were Required to Raise the ADA Claim at the Administrative Level.**

While the Plaintiffs did present their IDEA claim to the IHO, they did not exhaust the putative ADA claim. Indeed, the Plaintiffs failed even to raise an ADA claim in any of their complaints at the administrative level. Accordingly, the IHO did not address any ADA claim in her decision and order. *See* Complaint, Attachment 1. The exhaustion of an IDEA claim before an administrative body does not relieve Plaintiffs of their concomitant obligation to exhaust related ADA or other claims that allege the deprivation of a FAPE.

The Second Circuit has not squarely addressed a circumstance when a plaintiff brings both an IDEA claim and an ADA claim in district court but has only exhausted his or her IDEA claim at the administrative level. The Second Circuit has addressed numerous other circumstances when a plaintiff brings either an ADA claim or Section 504 claim but failed to exhaust *any* administrative procedure for them. *See, e.g.*, *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 243 (2d Cir. 2008); *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 480 (2d Cir. 2002). For example, in *Cave*, the plaintiffs brought both an ADA and Section 504 claim, but did not bring an IDEA claim. *Cave*, 514 F.3d at 243. Because the appellants failed to exhaust the administrative remedies provided to them by the IDEA, the Second Circuit determined that the district court lacked subject matter jurisdiction. *Id.*; *see also Hope v. Cortines*, 69 F.3d 687, 688 (2d Cir.1995) (Litigants must "exhaust the IDEA's administrative procedures before bringing suit under the ADA to obtain relief that is available under the IDEA.").

Other Circuits, however, have addressed similar circumstances. Specifically, the Eleventh Circuit held that a plaintiff's ADA and § 504 claims were properly dismissed for failure

7

to exhaust administrative remedies under the IDEA. *See Durbrow v. Cobb Cty. Sch. Dist.*, 887 F.3d 1182, 1189 (11th Cir. 2018). The Court explained:

> In addition to the IDEA, parents of children with disabilities often invoke two federal antidiscrimination statutes in the course of disputes about whether a school district has satisfied its obligations under the IDEA: § 504 of the Rehabilitation Act, which prohibits federally funded programs from discriminating on the basis of a disability; and Title II of the ADA, which applies the same prohibition to public entities.
>
> The Durbrows say that, because their IDEA claims were processed in an Office of State Administrative Hearings ("OSAH") proceeding, they were not required to pursue an additional administrative hearing with respect to their § 504 and ADA claims. That is incorrect. Because the crux of their § 504 and ADA claims alleged that the School District had denied Connor a FAPE, the claims were subject to the IDEA's administrative exhaustion requirement. The Durbrows' failure to exhaust barred judicial review of their § 504 and ADA claims.
>
> ....
>
> **The exhaustion of an IDEA claim before an administrative body does not relieve a plaintiff of the concomitant obligation to exhaust related § 504, ADA, or any other claims that allege the deprivation of a FAPE.** *M.T.V.*, 446 F.3d at 1159; *see also Reyes v. Manor Indep. Sch. Dist.*, 850 F.3d 251, 256 (5th Cir. 2017). In order to properly exhaust a claim that seeks relief for the denial of a free appropriate public education, the claim must proceed through an administrative hearing and receive a final decision from an administrative judge before review may be sought from a federal district court. 20 U.S.C. § 1415(i)(2)(A), (g)(2); *M.T.V.*, 446 F.3d at 1159; *see also* Reyes, 850 F.3d at 256.

*Durbrow v. Cobb Cty. Sch. Dist.*, 887 F.3d 1182, 1189 (11th Cir. 2018) (emphasis added).

Similarly, the Fifth Circuit has held that a student must exhaust his Section 504 claims. The Court explained:

> E.M. asserts that the district court erred in holding that his Rehabilitation Act claims were not exhausted. **The IDEA requires administrative exhaustion not just of claims arising under it, but also of Rehabilitation Act claims that overlap with the IDEA**. See 20 U.S.C. § 1415(l). In the district court, E.M. argued only that he exhausted his administrative claims under the Rehabilitation Act by pleading those claims before the hearing officer. Exhaustion requires more than pleading a claim, however; it requires "findings and decision" by the administrative body. See 20 U.S.C. § 1415(g). The district court was correct in holding that E.M. failed to exhaust his Rehabilitation Act claims by only pleading those claims, because he did not address them in his prehearing request for relief or otherwise obtain any decision on them from the hearing officer.

8

*Reyes v. Manor Indep. Sch. Dist.*, 850 F.3d 251, 256 (5th Cir. 2017) (emphasis added).

Consistent with *Fry*, these cases hold that ADA and/or Rehabilitation Act claims that are factually intertwined and dependent on a showing of a deprivation of FAPE–the touchstone of an IDEA claim–must be exhausted.[2] Moreover, the outcomes in both the *Durbrow* and *Reyes* cases are mandated by principles of due process. While claims brought under the ADA may be similar to ones under the IDEA, each have distinct legal standards. The ADA (and Section 504 for that matter) define the term "disability" differently than the IDEA does. *See B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 159 (2d Cir. 2016). The ADA defines "disability" as a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). By contrast, under the IDEA, a "child with a disability" has one or more of an enumerated list of impairments requiring "special education or related services." 20 U.S.C. § 1401(3).

Although both statutes define "disability" by reference to the effects of an individual's impairment, they provide for different inquiries, and school districts must be able to address these differences at the administrative level and develop an appropriate record so they can adequately evaluate the claims and, ultimately, defend themselves if necessary should the case proceed to federal court. A school district is required to respond to a complaint and allegations that it is presented with; it cannot be expected to presume that every complaint includes an unstated claim of discrimination against it.

---

[2] In a similar vein, this Court has held that state hearing officers have jurisdiction over Section 504/ADA issues when the resolution of those issues are necessary to resolve IDEA claims. *Doe v. Westport Bd. of Ed.*, No. 3:18cv1683 (KAD), 2020 WL 869861, at *6 (D. Conn. Feb. 21, 2020). *Doe* concerned the issue of subject matter jurisdiction over a parent's claim for reimbursement under the IDEA, and, while all of the parent's claims were exhausted in the administrative setting in that case, the Court's analysis of the Section 504/ADA issues refutes any claim that exhaustion of such claims would be futile.

Indeed, the Second Circuit has recognized with respect to the IDEA's pleading requirements that "the key to the due process procedures is fair notice," and that, as such, a school district "cannot be expected to resolve problems of which it is unaware." *C.F. v. N.Y. City Dep't of Educ.*, 746 F.3d 68, 77-78 (2d Cir. 2014). Specifically, the Second Circuit has held that "[t]he parents must state all of the alleged deficiencies ... in their initial due process complaint in order for the resolution period to function ...." *R.E. v. N.Y. City Dep't of Educ.*, 694 F.3d 167, 187 n.4 (2d Cir. 2012) (emphasis added). The Second Circuit explained:

> The IDEA further provides that "[t]he party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in the [complaint], unless the other party agrees otherwise." 20 U.S.C. § 1415(f)(3)(B). District courts in this circuit have held that issues not raised in due process complaints are foreclosed from review in federal court, absent agreement from the opposing party. *See, e.g., E.F. v. N.Y.C. Dep't of Educ.*, No. 12–CV–2217 (MKB), 2013 WL 4495676, at *17 (E.D.N.Y. Aug. 19, 2013); *Dirocco v. Bd. of Educ.*, No. 11 Civ. 3897(ER), 2013 WL 25959, at *23 (S.D.N.Y. Jan. 2, 2013).

*C.F.,* 746 F.3d at 78.

In addition to the notice issue implicated by due process concerns, requiring exhaustion of all FAPE-related claims comports with important policy concerns underlying the IDEA. These concerns contemplate that disputes between parents and educators concerning what are fundamentally educational decisions, to all extents possible, should be addressed and resolved in a cooperative forum rather than in court. As the Second Circuit has held:

> The IDEA's exhaustion requirement was intended to channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances. The exhaustion requirement "prevents courts from undermining the administrative process and permits an agency to bring its expertise to bear on a problem as well as to correct its own mistakes." *Heldman v. Sobol*, 962 F.2d 148, 159 (2d Cir. 1992). "Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled

>children." *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303 (9th Cir. 1992); see also *Crocker v. Tenn. Secondary Sch. Athletic Ass'n*, 873 F.2d 933, 935 (6th Cir. 1989) ("States are given the power to place themselves in compliance with the law ... Federal Courts–generalists with no experience in the educational needs of handicapped students–are given the benefit of expert fact-finding by a state agency devoted to this very purpose.").

*Polera*, 288 F.3d at 487.

In this case, the failure to raise the putative ADA issues in the administrative proceeding not only deprived the defendant of the ability to establish a record and defend itself, but that failure also deprived this Court of the benefit of a fully developed record upon which to review and evaluate such a claim. Because the Plaintiffs failed to raise their ADA-related claims in their underlying complaint or at any point before the IHO, the Court lacks subject matter jurisdiction over the ADA claim, and it must be dismissed.

> II. **Even if The Court Determines that Plaintiffs Exhausted Their Administrative Remedies, Plaintiffs Have Not Plausibly Alleged the Elements of a Title II ADA Claim.**

While the Federal Rules do not require detailed factual allegations, the Second Circuit has made clear that a "plaintiff's obligation to provide the grounds of his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Perkins v. S. New Eng. Tel. Co.,* No. 3:07-CV-967, 2009 WL 350604, at *1 (D. Conn. Feb. 12, 2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). The Plaintiffs have failed to do so here.

To establish a prima facie case of discrimination under Title II of the ADA, a plaintiff must show the following: (1) plaintiff is a "qualified individual with a disability;" (2) plaintiff was "excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by [the] public entity;" and (3) "such exclusion or discrimination was due to [plaintiff's] disability." *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 158 (2d Cir.

11

2016). "A plaintiff may recover money damages under the ADA ... by showing a statutory violation resulted from 'deliberate indifference' to the rights secured the disabled by those statutes." *K.M. ex rel. D.G.*, 381 F.Supp.2d at 358; *see Bartlett v. N.Y. State Bd. of Law Examiners,* 156 F.3d 321, 331 (2d Cir. 1998) (intentional discrimination under the Rehabilitation Act may be inferred from "at least deliberate indifference to the strong likelihood that a violation of federally protected rights will" occur), *vacated on other grounds,* 527 U.S. 1031790 (1999). Additionally, a private suit brought pursuant to Title II of the ADA for *money damages* can only be maintained if the plaintiff "can establish that the Title II violation was motivated by either discriminatory animus or ill will due to disability." *See Henrietta D. v. Bloomberg,* 331 F.3d 261, 288 (2d Cir. 2003) (internal quotation marks omitted).

As relates to the ADA claim, the Plaintiffs' complaint consists entirely of conclusory allegations that the Board failed to reasonably accommodate the Student's needs associated with her documented disabilities and excluded her from participation from the programs and services it offered nondisabled students. *See* Complaint ¶ 53. Instead of setting forth allegations to demonstrate a viable ADA claim, the Plaintiffs rely solely on threadbare legal conclusions. *See* Complaint ¶¶ 46-53.

Even more fatal to the Plaintiffs' ADA claim is that it fails to sufficiently allege that the Board acted with deliberate indifference, or that the Board's alleged actions were motivated by either discriminatory animus or ill will due to disability. *See Doe v. Torrington Bd. of Educ.*, 179 F. Supp. 3d 179, 196 (D. Conn. 2016) ("Even if Doe had adequately alleged that the bullying was based on his disability, his ADA and Section 504 claims would still fail, because he does not sufficiently allege that the Board acted with deliberate indifference.'").

In this case, there is no support in the Complaint of either bad faith or gross misjudgment on the part of the Board. Accordingly, because the Plaintiffs fail to demonstrate the requisite intentional discrimination required by a Title II ADA claim and because the Plaintiffs do not sufficiently allege that the Board acted with deliberate indifference, discriminatory animus or ill will due to disability, the Plaintiffs' ADA claim must be dismissed even if it is not subject to the exhaustion requirement.

Lastly, because Plaintiffs ADA claim must be dismissed, this Court should strike Plaintiffs' request for relief for compensatory damages, as such damages are not available under the IDEA. *See Polera*, 288 F.3d at 486 (holding monetary damages not available under IDEA).

## IV.    CONCLUSION

For the reasons stated above, the Second Count of the Complaint must be dismissed.

<pre>
                                    DEFENDANT,
                                    GREENWICH BOARD OF EDUCATION,

                                By: /s/ Patrick M. Fahey
                                    Patrick M. Fahey (ct13862)
                                    Andreana R. Bellach (ct21302)
                                    Tyler J. Bischoff (ct30923)
                                    SHIPMAN & GOODWIN LLP
                                    One Constitution Plaza
                                    Hartford, CT 16013
                                    Tel.: (860) 251-5000
                                    Fax: (860) 251-5219
                                    pfahey@goodwin.com

                                    Abby R. Wadler (ct28051)
                                    Town Hall, Law Department
                                    101 Field Point Road, P.O. Box 2540
                                    Greenwich, CT 06836-2540
                                    Tel.: (203) 622-7876
                                    Fax.: (203) 622-3816
                                    abby.wadler@greenwichct.org

                                    Its Attorneys
</pre>

SG 10298891v.3