**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| R.R. AND W.R., INDIVIDUALLY AND AS | : | |
| NEXT FRIENDS OF M.R., | : | CIVIL CASE NO. |
|      Plaintiffs, | : | 3:21-CV-00873 (JCH) |
| | : | |
| v. | : | |
| | : | |
| GREENWICH BOARD OF EDUC. | : | May 6, 2022 |
|      Defendant. | : | |

**RULING ON DEFENDANT'S MOTION TO DISMISS (DOC. NO. 13)**

## I.   INTRODUCTION

Plaintiffs R.R. and W.R. bring this action individually and as parents of M.R., a minor student with multiple disabilities.  See Compl. at ¶ 1 (Doc. No. 1).  In their first count, they seek reversal of the final Decision of the Independent Hearing Officer ("IHO") appointed by the Connecticut Department of Education, who determined that defendant Greenwich Board of Education (the "Board") had met its obligations under the Individuals with Disabilities Education Act ("IDEA").  Id. at ¶¶ 31-44; see also Compl., Attach. 1, Final Decision and Order (Doc. No. 1-1).  In Count Two, they bring an additional claim under the Americans with Disabilities Act ("ADA"), asserting federal question jurisdiction and alleging that the Board violated plaintiffs' rights under that Act. Id. at ¶¶ 45-53.

The Board has moved to dismiss the second count of plaintiffs' Complaint.  See Mot. to Dismiss (Doc. No. 13); Mem. of Law in Supp. of Mot. to Dismiss ("Def.'s Mem.") (Doc. No. 14); Reply in Supp. of Mot. to Dismiss ("Def.'s Reply") (Doc. No. 17). Plaintiffs oppose this Motion.  See Pls.' Resp. to Def.'s Mot. to Dismiss (Doc. No. 15); Mem. of Law in Opp'n to Def.'s Mot. to Dismiss ("Pls.' Mem.") (Doc. No. 16).  At

1

plaintiffs' request, the court also heard oral argument on the Motion to Dismiss on April 27, 2022.  See Pls.' Mot. for Oral Argument (Doc. No. 26); Minute Entry (Doc. No. 30).

For the reasons discussed below, the court grants the Motion to Dismiss.

## II.   ALLEGED FACTS AND PROCEDURAL HISTORY

M.R. and her parents are residents of Greenwich, Connecticut.  Compl. at ¶ 23. In early to mid-2020, her parents filed three requests for a due process hearing with the Connecticut State Department of Education.  Id. at ¶¶ 24-26.  The requests asserted an IDEA claim based on the Board's alleged denial of M.R.'s right to a Free Appropriate Public Education ("FAPE") during the 2019-2020 and 2020-2021 school years.  Id. at ¶ 27.  The three requests were consolidated, but due to the COVID-19 pandemic and a tropical storm, the proceedings were delayed and did not commence until September 2020.  Id. at ¶ 28.  Following the hearing and post-hearing briefing from the parties, the IHO issued her Final Decision and Order on May 12, 2021, denying the claims brought by M.R. through her parents.  Id. at ¶¶ 29-30.  Plaintiffs subsequently filed the instant action in this court on June 24, 2021.  See generally Compl.

Although the facts underpinning both the IHO's Decision and M.R.'s Count One IDEA claim seeking to reverse that Decision are complex, a detailed recitation of those allegations is not necessary for the purposes of this Ruling because the Board has only moved to dismiss Count Two of the Complaint – M.R.'s ADA claim.  In that Count, plaintiffs first incorporate all the allegations related to the denial of a FAPE in Count One.  Id. at ¶ 45.  They then recite the relevant provisions of the ADA, id. at ¶¶ 46-52, before alleging that "[b]y unnecessarily denying [M.R.] reasonable disability-related accommodations and by blaming her and her disabilities for her failing grades, [the Board] discriminated against [her] on the basis of her disabilities, and created a hostile

learning environment that denied [her] the right to participate in and receive the benefits, services, or opportunities the Board offers to nondisabled students.  The Board refused to provide the supports [M.R.] needed to fully access those opportunities, blaming her disability when she didn't succeed."  Id. at ¶ 53.

The Board has moved to dismiss plaintiffs' Count Two ADA claim on two grounds.  First, it argues that this court lacks subject-matter jurisdiction over that claim because plaintiffs did not raise their ADA claim during the proceedings below and thus have failed to exhaust their administrative remedies.  Def.'s Mem. at 1.  They also argue that, in the event that the court concludes it does have jurisdiction over plaintiffs' ADA claim, it should still be dismissed for failure to state a claim.  Id.

## III.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).  A plaintiff bears the burden of proving the existence of subject matter jurisdiction by a preponderance of the evidence.  Id.  When determining whether to dismiss for lack of subject matter jurisdiction, a court may "consider[ ] evidence outside the pleadings."  See Amidax Trading Group v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011).  A court also "has discretion to hold a hearing to resolve factual disputes that bear on the court's jurisdiction."  Saleh v. Sulka Trading, 957 F.3d 348, 353 (2d Cir. 2020).  However, a court must otherwise "accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor."  Id.

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual allegations in a Complaint as true, and draws all reasonable inferences in the nonmovant's favor.  See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020).  However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action."  Iqbal, 556 U.S. at 678.

## IV.   ANALYSIS

The court begins by addressing whether it has subject-matter jurisdiction to hear plaintiffs' ADA claim.  Because it concludes plaintiffs have failed to exhaust their remedies as to their ADA claim and thus that the court lacks jurisdiction, the court does not address defendant's argument the plaintiffs have failed to state a claim in Count Two.

### A.   Exhaustion of Remedies

The IDEA creates a federal cause of action to enforce the right to a FAPE.  See 20 U.S.C. § 1415(i)(2)(A).  This cause of action is qualified, however, by a requirement that the plaintiff first exhaust the administrative processes provided for in the IDEA before bringing an action in district court.  See 20 U.S.C. § 1415(l); see also Fry v. Napoleon Cmty. Sch., 137 S. Ct. 743, 749 (2017) (explaining, in detail, the administrative processes in section 1415 and noting that, after exhausting these

remedies, "a parent unhappy with the outcome of the administrative process may [then] seek judicial review by filing a civil action in state of federal court").

Where plaintiffs assert only an IDEA claim based on an alleged deprivation of a FAPE, the application of the exhaustion provisions in the statute are straightforward: if plaintiffs have availed themselves of the administrative processes in the Act, then the District Court has jurisdiction to hear their appeal of the IHO's decision.  If they have not, then the court lacks subject-matter jurisdiction.[1]  However, the scope of the exhaustion requirement becomes more complex when plaintiffs assert other causes of action in addition to their IDEA claim.  In certain circumstances, the exhaustion requirements under the IDEA extend to claims brought under the ADA and other similar statutes that protect the rights of disabled students.  Section 1415(l), which details the IDEA exhaustion requirement, provides that:

> Nothing [in the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the [ADA], title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, <u>except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.</u>

20 U.S.C. § 1415(l) (emphasis added).  In other words, if plaintiffs bring an ADA claim that "seek[s] relief that is also available" under the IDEA, they are required to first assert that ADA claim through the IDEA's administrative processes before bringing an action in federal court.

---

[1] For instance, defendants do not dispute that plaintiffs exhausted their administrative remedies as to their Count One IDEA claim.  <u>See</u> Def.'s Mem. at 5 (conceding that "Plaintiffs here did pursue their IDEA claim through the administrative process", but arguing that "they have not exhausted their putative ADA claim").  As such, the Board has not disputed this court's jurisdiction over Count One of plaintiffs' Complaint.

In <u>Fry</u>, the Supreme Court interpreted this exact provision of the IDEA, providing a framework for how courts should assess whether an ADA claim would be subject to the exhaustion requirements in section 1415.  That case centered on the refusal of the local and regional school districts to allow E.F., a student with cerebral palsy, to attend school accompanied by her trained service dog.  <u>Fry</u>, 137 S. Ct. at 750-51.  Her parents sued the districts in federal court based on this refusal, "alleg[ing] that [they had] violated Title II of the ADA and § 504 of the Rehabilitation Act ["section 504"] by 'denying [E.F.] equal access' to [the school] and its programs by 'refus[ing] to reasonably accommodate' [her] use of a service animal, and otherwise 'discriminat[ing] against [her] as a person with disabilities.'"  <u>Id.</u> at 752 (quoting the Complaint).

After "[t]he District Court granted the school districts' motion to dismiss the suit, holding that § 1415(l) required the Frys to first exhaust the IDEA's administrative procedures . . . the Sixth Circuit affirmed on the same ground."  <u>Id.</u>  The Supreme Court vacated the Sixth Circuit's Ruling, however, and clarified the standard for determining whether exhaustion of an ADA claim was necessary.  As an initial matter, the Court first held that, to be subject to section 1415(l), the "suit must seek relief for the denial of a FAPE, because that is the only 'relief' the IDEA makes 'available.'"  <u>Id.</u>  Second, Justice Kagan provided further instructions for lower courts to assess whether, at its core, a claim sought relief from a denial of a FAPE.  "[I]n determining whether a suit indeed 'seeks' relief for such a denial, a court should look to the substance, or gravamen, of the plaintiff's complaint."  <u>Id.</u>  Doing so requires an "examination" of the claims that "should consider substance, not surface.  The use (or non-use) of particular labels and terms is not what matters."  <u>Id.</u> at 755.  The Court continued:

> One clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination, can come from asking a pair of hypothetical questions.  First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was <u>not</u> a school—say, a public theater or library?  And second, could an <u>adult</u> at the school—say, an employee or visitor—have pressed essentially the same grievance?  When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward.  But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

Id. at 756 (emphasis in original).  Finally, the Court also observed that "[a] further sign that the gravamen of a suit is the denial of a FAPE can emerge from the history of the proceedings.  In particular, a court may consider that a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute – thus starting to exhaust the Act's remedies before switching midstream . . . . [P]rior pursuit of the IDEA's administrative remedies will often" – although not always – "provide strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE."  Id. at 757.

Here, it is quite clear that the gravamen of plaintiffs' Complaint is denial of a FAPE.  As an initial matter, the factual allegations underpinning plaintiffs' Count One IDEA claim for denial of a FAPE are expressly incorporated into their Count Two ADA claim.  Compl. at ¶ 45.  Moreover, the additional facts alleged in Count Two are sparse, and mostly duplicative of the allegations made earlier in the Complaint.  Id. at ¶ 53.  The best evidence of this is in plaintiffs' own Memorandum, where they describe their ADA claim as based on, at its core, the Board "excluding [M.R.] from participation [in] and the opportunity to benefit from the programs and services it offered nondisabled students."  Pl.'s Mem. at 2.  This is fundamentally a claim based on a denial of a FAPE.  Indeed,

7

most of Count Two is entirely devoid of any factual allegations at <u>all</u>, consisting solely of legal conclusions.  Compl. at ¶¶ 46-52 (quoting portions of the ADA, C.F.R., and <u>Fry</u> to articulate the standard for an ADA violation).  In this way, the "substance, or gravamen" of plaintiffs' Count Two ADA claim is identical to its Count One denial of a FAPE claim under IDEA: it seeks relief for the same injury, but under the guise of the ADA rather than the IDEA.

Thinking through Justice Kagan's two hypothetical questions in <u>Fry</u> and looking to the history of the administrative proceedings in this case further supports this conclusion.  Plaintiffs here could not have brought the same ADA claim against a public facility that was not a school.  This is because the "essence – even though not [the] wording" – of their ADA claim "is the provision of FAPE."  <u>Fry</u>, 137 S. Ct. at 757.  Plaintiffs' key factual allegation in Count Two is that M.R. was "denied . . . the right to participate in and receive the benefits, services, or opportunities the Board offers to nondisabled students" and that "[t]he Board refused to provide the support[ ] [she] needed to fully access those opportunities."  Compl. at ¶ 53.  "The difficulty of transplanting [these allegations] to . . . other contexts [such as] a public theater or library" suggests that the gravamen of her claim is a denial of a FAPE.  <u>Fry</u>, 137 S. Ct. at 756-57.  Nor could an adult at the school have brought the same claim, for the simple reason that, in that context, "there is no FAPE obligation" to an adult, and the adult's allegations regarding their inability to access educational opportunities would be insufficient to state an ADA claim.  <u>Id.</u> at 756.  Finally, the history of the administrative proceedings also "provide[s] strong evidence" here "that the substance of [plaintiffs' ADA] claim concerns the denial of a FAPE."  <u>Id.</u> at 757.  Plaintiffs have fully availed

themselves of the administrative processes available under the IDEA for their IDEA

claim.  Yet on appeal of the IHO's decision finding that there was no denial of a FAPE,

they have simply appended an ADA claim to their Complaint without substantially

adding to the factual allegations in that Count.  Thus, because the "essence . . . [of

plaintiffs' ADA claim] is the provision of a FAPE", section 1415(l) applies and they were

required to exhaust the IDEA's administrative procedures as to that claim before

asserting it here.  Id. at 757.

This conclusion is also buttressed by the case law in lower courts interpreting Fry

and section 1415(l) since 2017.  Although defendants are correct to point out that the

Second Circuit has not yet squarely addressed the precise fact pattern presented here

in a published opinion, they have pointed the court to two other Circuits that have.[2]  In

Durbrow v. Cobb Cty. Sch. Dist., 887 F.3d 1182 (11th Cir. 2018), the Eleventh Circuit

answered the same "essential question[ ]" at issue here of "whether appellants' claim[ ]

of disability-based discrimination under . . . [the ADA] must be administratively

exhausted under the [IDEA]" before that claim is brought in federal court.  Durbow, 887

F.3d at 1186.  In that case, the parents and the student had initially pursued their IDEA

---

[2] Following oral argument, however, the Second Circuit did issue a non-binding summary order that provides further support to this court's interpretation of Fry here.  See Schneider v. Mahopac Central Sch. Dist./Bd. Of Educ., No. 21-2201, 2022 WL 1316211 (2d Cir. May 3, 2022).  In that case, the plaintiff had brought a First Amendment and a Rehabilitation Act retaliation claim without first exhausting the IDEA's administrative remedies.  Id. at *2.  After considering Justice Kagan's two hypothetical questions and applying Fry, the Circuit concluded that plaintiff's Complaint sought "relief that is available under the IDEA, and therefore that his First Amendment and Rehabilitation Act retaliation claims were subject to the IDEA's exhaustion requirement."  Id.  This was because, similar to the case here, the Complaint sought "relief stemming from [the district's] termination of accommodations it had agreed to in [plaintiff's] IEP – relief that is inherently related to whether [the student] was receiving a FAPE."  Id.

Two days after the summary order in Schneider was issued, defendant moved for leave to file the opinion as an additional authority.  See Mot. for Leave to File Subsequent Authority (Doc. No. 31). Because the court was already aware of the Decision, it terminates that Motion as moot.

denial of a FAPE and section 504 claims through the IDEA's administrative processes. Id. at 1188.  "While the introduction of their Due Process Hearing Request referenced the [ADA], the Request raised only [the] IDEA and [section] 504 claims."  Id.  After their request to consolidate the two claims was denied, the family withdrew its section 504 claim, and the hearing proceeded "on only the . . . IDEA claims."  Id. (emphasis in original).  Following the ALJ's Final Decision in favor of the school district, the family "took [its] case to" federal court, adding back in its section 504 claim and also bringing a claim under the ADA.  Id. at 1189.  The district court then granted the school district's motion to dismiss both of these claims, holding that section 1415(l) required the family to have first exhausted its administrative remedies as to those claims before bringing them in federal court.  Id.

On appeal, the Eleventh Circuit affirmed the district court's Ruling.  Relying on Fry, the court held that, "[b]ecause the crux of [the family's] § 504 and ADA claims alleged that the School District had denied [the student] a FAPE, th[ose] claims were subject to the IDEA's administrative exhaustion requirement."  Id.  As is the case here, the court observed that the section 504 and ADA claims brought in federal court "focused precisely on the adequacy of the educational program the School District afforded [the student]."  Id. at 1190.  In other words, their non-IDEA claims "complained that [the student's] course of study was not appropriately tailored to his disability."  Id. at 1191.  Because the gravamen of their ADA and section 504 allegations was the denial of a FAPE, and "[t]he exhaustion of an IDEA claim . . . does not relieve a plaintiff of the concomitant obligation to exhaust related § 504, ADA, or any other claims that allege

the deprivation of a FAPE", their ADA claim was properly dismissed by the district court

for failure to exhaust their administrative remedies.  Id.

In Reyes v. Manor Indep. Sch. Dist., 850 F.3d 251 (5th Cir. 2017), the Fifth

Circuit held the same.  There, the plaintiffs had pled both IDEA and section 504 claims

in their administrative complaint, but dropped the section 504 claims over the course of

the administrative proceedings.  Reyes, 850 F.3d at 254.  As such, the eventual

Decision from the hearing officer "did not discuss the [section 504] claims."  Id.  When

the student's mother then brought suit in federal court on his behalf, she again raised

the section 504 claims.  Id.  The district court, however, dismissed those claims for

failure to exhaust, and the Fifth Circuit affirmed.  Id. at 253.  As this court has done here

and as the Eleventh Circuit did in Durbrow, the Reyes court applied Justice Kagan's

reasoning and two hypothetical questions in Fry to conclude that, because plaintiffs'

section 504 claims were "directly related to the education he received while attending

the District's school", he was required to exhaust the IDEA's administrative processes

as to those claims before bringing them in federal court.[3]  Id. at 257.

Finally, although the Second Circuit has not squarely addressed the question

presented here, several district courts in this Circuit have opined on the issue, and all

have come to similar conclusions.  See, e.g., D.S. v. Rockville Ctr. Union Free Sch.

Dist., No. 19-CV-03430, 2022 WL 683973, at *13 (E.D.N.Y. Mar. 8, 2022) (finding that,

because "the Plaintiff's ADA and Section 504 claims of discrimination concern denial of

an educational accommodation", and "Plaintiffs failed to raise th[ose] ADA and 504

---

[3] The Circuit also held that "[e]xhaustion requires more than pleading a claim" at the administrative level, "it requires 'findings and decision' by the administrative body."  Id. at 256 (quoting 20 U.S.C. § 1415(g)).

claims" during the administrative process, their ADA and section 504 claims "must be

dismissed [under Fry] for failure to exhaust administrative remedies"); Schneider v.

Mahopac Cent. Sch. Dist., No. 20-CV-709, 2021 WL 3887913, at *5-6 (S.D.N.Y. Aug.

31, 2021) (holding that, because "Plaintiff's retaliation claims (under Section 1983 and

Section 504) [were] essentially based on the same facts as Plaintiff's IDEA claim", those

claims were "subject to [the] IDEA's exhaustion requirement"); Doe v. Westport Bd. of

Educ., --- F. Supp. 3d ----, 2020 WL 869861, at *6 (D. Conn. Feb. 21, 2020) (parties are

required "to exhaust [the] IDEA's administrative procedures when seeking relief for the

denial of a FAPE before bringing Section 504/ADA claims if the Section 504/ADA claims

also seek relief for the denial of a FAPE");[4] Wong v. State Dept. of Educ., No. 3:16-CV-

1873, 2018 WL 500642, at *5-6 (D. Conn. Jan. 22, 2018) (noting that, post-Fry, "§

---

[4] At oral argument, the court referenced Doe, a case defendant cited in its Memorandum.  See
Def.'s Mem. at 9 n. 2. Following a discussion with defense counsel regarding whether or not a Hearing
Officer in Connecticut would have had jurisdiction over plaintiffs' ADA claim, plaintiffs' counsel argued,
inter alia, that bringing their ADA claim during the administrative proceedings in this case would have
been futile and, thus, they were not required to do so.

   In Doe, however, Judge Dooley acknowledged this possibility, but held that, even if bringing the
claim was futile, it would still be a necessary predicate for a federal court to exercise jurisdiction if the
ADA claim was one for which exhaustion was required under section 1415(l).  See Doe, 2020 WL
869861, at *6 (rejecting parents' argument that "it would be inconsistent for th[e] Court to find that IDEA
Hearing Officers lack jurisdiction over [ADA] claims", but that exhaustion was still required by holding that
"[t]here is nothing inconsistent about requiring parties to exhaust IDEA's administrative procedures" as to
their ADA claims, regardless of the likelihood (or lack thereof) of success).

   The Second Circuit has also held that, in most circumstances, futility cannot be used as an end-
around to the IDEA's exhaustion requirement.  During oral argument, defense counsel pointed the court
to Cave v. East Meadow Union Free Sch. Dist., 514 F.3d 240, 250 (2d Cir. 2008).  That case was decided
before Fry, but the Circuit held that, absent an "allegation of a system-wide violation of the IDEA's
mandates . . . a district-wide policy of discrimination . . . [or an] administrative process [that] is so
structurally tainted that they would not have been afforded a fair and impartial forum", futility arguments
lack merit and a party is "required to first seek relief through the administrative review procedures
available to them under the IDEA before proceeding with a federal lawsuit."  Cave, 514 F.3d at 250.

   Nothing of the sort has been alleged here.  In addition, plaintiffs did not raise their futility
argument in their Memorandum.  Therefore, at least on the facts alleged here, the court follows Cave and
Doe on the issue of futility and holds that plaintiffs were required to exhaust the IDEA administrative
procedures as to their ADA claim, regardless of the likelihood of succeeding on that claim in those
proceedings.

1415's exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a [FAPE]", but holding that plaintiffs in that case had "exhausted their administrative remedies") (internal quotations and citations omitted).

Here, plaintiffs do not dispute that they eschewed the IDEA's administrative processes. Nor have they alleged facts in their ADA claim to show that they are seeking relief for anything beyond the denial of a FAPE. Thus, because the gravamen of their Count Two ADA claim is the denial of a FAPE, they were required to exhaust their IDEA administrative remedies before bringing that claim here. Accordingly, the Motion to Dismiss is granted.

## V.   CONCLUSION

The Motion to Dismiss (Doc. No. 13) is granted, without prejudice to plaintiffs repleading their ADA claim if they have a good faith belief that they can assert an ADA claim that this court would have jurisdiction over under Fry. If plaintiffs choose to replead, they must file a motion to amend their Complaint with an attached proposed amended complaint and red-line version within fourteen (14) days from the date of this Ruling.

In addition, for the reasons discussed supra at 9 n. 2, the court terminates defendant's Motion for Leave to File Subsequent Authority (Doc. No. 31) as moot.

Finally, the parties indicated in the Report of their Rule 26(f) planning meeting their agreement that Count One of this action "should be determined on the record and that no trial should be necessary." See Report of Parties' Planning Meeting at 9 (Doc. No. 9). The Certified Administrative Record in this action was filed on December 17, 2021, and plaintiffs did not move to present additional evidence. See Doc. No. 25. Accordingly, the court orders that motions for summary judgment are due no later than

30 days from the date of this Ruling, regardless of whether plaintiffs choose to replead their ADA claim.

**SO ORDERED.**

Dated at New Haven, Connecticut this 6th day of May 2022.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge