UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RR AND WR, INDIVIDUALLY AND AS NEXT FRIENDS OF MR, | No. 3:21cv00873 (JCH) |
| *Plaintiff*s, | |
| v. | |
| GREENWICH BOARD OF EDUCATION, | |
| *Defendant*. | JANUARY 31, 2023 |

**DEFENDANT'S LOCAL RULE 56(a)1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to the Court's order, Defendant Greenwich Board of Education (the "Board") respectfully submits this Local Rule 56(a)1 Statement of Facts in support of its Motion for Summary Judgment (ECF 40). As used herein, Independent Hearing Officer is referred to as "IHO," Student M.R. as the "Student," New York Department of Education as "NYCDOE," Section 504 of the Rehabilitation Act of 1973 as "Section 504," York Preparatory School as "York," Fusion Academy as "Fusion," Winston Preparatory School in Norwalk as "Norwalk Winston Prep," State of Connecticut Department of Education Final Decision and Order dated May 12, 2021 (ECF 1-1) is "IHO Decision." All other capitalized terms are defined herein.

Citations herein to the administrative record are to the ECF filing number at the page number applied by the ECF system.

**LOCAL RULE 56(a)1 STATEMENT**

1. The Student's family moved from New York City to Greenwich, Connecticut, on August 27, 2019. (ECF 25-8 at 1224).

2. At the time of the move, Student was thirteen-years old (ECF 25-8 at 1054),

entering eighth grade (ECF 25-6 at 19), and had an IEP that had been developed by the NYCDOE for the prior academic year (i.e. 2018-2019) ("NYC IEP"), which recommended placement in a public school in general education classes with special education supports. (ECF 25-6 at 20, 32).

**The Expired New York IEP**

3.  In fourth grade, Student attended public school and met grade expectations across the curriculum and on state-wide tests, though concerns were raised regarding her lack of attention and difficulty with executive function. (*Id.* at 63). In fifth grade while attending general education in New York public school, she received accommodations under Section 504 including extended time and use of a separate location for test taking. (*Id.*).

4.  A clinical psychologist, Dr. Michelle Kornbleuth, diagnosed Student with having Attention Deficit/Hyperactivity Disorder and Specific Learning Disability with Impairment in Mathematics and Reading Comprehension. (*Id.* at 71).

5.  In December 2016, NYCDOE developed an IEP for Student recommending counseling, and special education teacher support for English language arts and math. (*Id*. at 38).

6.  Student was enrolled in private schools for sixth and seventh grade. (*Id*. at 19, 43).

7.  While enrolled in sixth grade at York private school (2017-2018), Student was evaluated by Dr. Preetika Mukherjee, who recommended classifying Student for special education services under the category of Other Health Impairment ("OHI"). (*Id*. at 45 at ¶ 2).

8.  In August 2018, NYCDOE prepared a revised IEP ("NYC IEP"), to be implemented at the start of seventh grade school year, considering Dr. Mukherjee's evaluation and Parents' concerns such as their belief that student required small class sizes. (*Id*. at 20-35).

9.  The NYC IEP reflected the Student's academic skills to be at or near grade level,

with the Student's instructional reading skills at the sixth-grade level and the Student's math skills at the fifth-grade level. (ECF 25-6 at 33).

10. The skills addressed through the NYC IEP included inferential and higher order reading comprehension (identifying character traits, themes, character changes, improving inferential reading, and improving reading stamina), writing (planning writing essays), math (solving multi-step word problems and solving multiplication and division problems through algorithms), social skills, coping skills, and self-confidence. (*Id*. at 25-27).

11. The NYC IEP provided that all classes for core academic subjects should be located in general education classrooms with special education supports integrated therein, together with push-in and pull-out special education supports and counseling sessions, one individual and one group session for forty minutes each per week. (*Id.* at 29). The NYC IEP did not recommend placement in a specialized private school. (*Id*. at 32).

12. The Parents never challenged either of the IEPs created by the NYCDOE by means of a due process request. (ECF 1-1 at ¶ 12; ECF 25-8 at 1312-13).

13. Despite there being no mention of one-on-one support in the NYC IEP, the Student's mother ("Mrs. R") testified that Parents felt the Student needed one-to-one academics, so Parents placed her at Fusion– also a private school – for the 2018-2019 school year. (ECF 25-8 at 1009, 1231).

14. Parents attended an open house at Winston Preparatory School's New York campus ("New York Winston Prep") on November 13, 2018 (*id.* at 1218), and Student attended an interview and shadow day thereafter. (*Id*. at 1221).

15. Student applied to New York Winston Prep for the following school year, i.e. the 2019 – 2020 school year (*id* at 1217; ECF 40 at 44-46), providing a neuropsychological

evaluation from Dr. Mukherjee and another from Michelle Kornbleuth, and Student's NYC IEP. (ECF 25-8 at 1220-21).

16. By February 2019, Parents paid a deposit to, and Student was accepted by, New York Winston Prep. (ECF 25-8 at 1219, 1221).

17. In June 2019, Parents declined acceptance to New York Winston Prep, and decided to move from Manhattan to Greenwich, Connecticut. (*Id*. at 1221-22).

18. Mrs. R. testified that Parents looked to move to Greenwich in a location that would be served by Greenwich's Central Middle School ("CMS"). (*Id*. at 1224).

19. Towards the end of June 2019, Parents and Student went to CMS to pick up enrollment forms. (*Id*. at 1222-23).

20. Student attended a two-week summer camp in New York, while the family remained in Manhattan. (*Id*. at 1224-25, 1227). Although available most of the summer for school tours, Parents and Student did not again visit CMS until mid-August. (*Id*. at 1227-28).

21. On August 7, 2019, Student remained a resident of New York. (*Id*. at 1224). Student's IEP was due for annual review in New York as of the end of the 2018-2019 school year. (ECF 25-6 at 20.) Specifically, Student's NYC IEP required an annual review to be held no later than August 7, 2019, thus, the NYDOE IEP had by its terms expired on August 7, 2019. (*Id*.)

**Greenwich Central Middle School**

22. In mid-August, Mrs. R and Student met with CMS Guidance Counselor Michele Davis to return registration material for the 2019-2020 school year. (ECF 25-8 at 1228). Mrs. R provided the school with Student's expired NYC IEP and only one of her neuropsychological evaluations – the evaluation prepared by Dr. Mukherjee. (ECF 25-8 at 1007, 1229-30). Mrs. R

did not provide CMS with the evaluation prepared by Dr. Kornbleuth, even though that evaluation addressed some of Student's learning disabilities. (*Id*. at 1024).

23. At this meeting, Mrs. R told Ms. Davis that the Student was very sensitive with high levels of anxiety, so the parties discussed ways to make the transition to CMS easier for Student. (*Id*. at 1012).

24. Ms. Davis and the Administrator for Special Education Lindsey Pontieri, along with special educators and administrators at CMS collaborated to develop Student's initial class schedule. (*Id.* at 730, 735). CMS relied on all the Student's past information provided to CMS (*id* at 735), including the expired NYC IEP, the 2018 evaluation and Parent's considerations in creating the Student's initial schedule. (*Id*. at 730). CMS Administrator, Thomas Healy, testified that Student was initially enrolled in a mix of grade level general education classes and skills-based, special education classes for English, math and academic lab. (*Id*. at 488-49).

**The Move to Greenwich and Start of Classes**

25. The Student's family moved to Greenwich and became Connecticut residents on August 27 (*id* at 1224), days before the start of classes at CMS on August 29. (ECF 25-4 at 44).

26. On the first day of classes (August 29), CMS notified and confirmed Parents' ability to attend a PPT meeting on September 9 and provided the required five-day advanced notice for that meeting. (ECF 25-8 at 1235; *see also* ECF 25-6 at 17).

27. CMS staff reviewed the lapsed NY IEP and correlated the services recommended in that expired IEP to the classes that would be made available to the Student upon her arrival at CMS. (ECF 25-8 at 730-31). CMS counselor Michele Davis coordinated with the special education administrator and determine the most appropriate academic class placements at CMS based on the recommendations in the expired NYC IEP. (*Id.* at 730).

28.     During the first week of classes, Ms. Baumeister, along with another special educator taught Student's ELA skills class of less than twenty students. (ECF 25-8 at 35, ECF 38 at 245). However, based on Student's work product and abilities, both educators agreed that the general education ELA class, with and with the support of Ms. Baumeister and a paraprofessional, was the least restrictive environment for Student. (ECF 25-8 at 34-35, 131; ECF 38 at 209-10).

29.     In consultation with her CMS team and Mrs. R, Student was moved to a general English class of less than 20 students with support from a paraprofessional and Ms. Baumeister. (ECF 25-8 at 36-39, 735; ECF 38 at 210). Ms. Baumeister testified that she recalled Student being happy when hearing about the change. (ECF 25-8 at 37).

**Development and Implementation of the September 9, 2019 IEP**

30.     The first Greenwich PPT meeting was held on September 9 (ECF 25-8 at 18, 204, 1315; *see also* ECF 25-6 at 17). At that time, the Student was determined eligible for special education, and an IEP for Student was developed. (ECF 25-6 at 1-2, 18; ECF 25-8 at 212, 1017). The Recommendations section of IEP notes that the school team "explained that the proposed goals and objectives are based on [Student's] prior IEP from New York and a neuropsychologist report included with her records and shared these draft goals and objectives with the team." (ECF 25-6, at 2). The Board's recommendations also ensured that her education was provided in the least restrictive environment with her nondisabled peers in English, science and social studies. (ECF 25-8 at 488).

31.     Mrs. R testified that she participated in the development of the IEP, providing additional information about Student, reviewed the proposed IEP, agreed with its goals, and agreed with implementing it immediately. (ECF 25-8 at 1240).

32. Under Connecticut law the Student was determined a student with a disability under the exceptionality category of OHI-ADD/ADHD and required specialized instruction in the areas of math, social, emotional and behavioral functioning. (ECF 25-6 at 1-2). The IEP recommended Academic Lab 5 times for 46 minutes per week and special education math skills class 5 times for 46 minutes per week. (*Id*. at 15). The Student had the additional support of Ms. Baumeister and a paraprofessional in her English class. (ECF 25-8 at 38, ECF 38 at 281). The IEP also recommended counseling one time 20-minutes individual and one time 30-minute group per week. (ECF 25-6 at 6).

33. Mrs. R admitted that the Greenwich IEP was consistent "on paper" with Student's NYC IEP. (ECF 25-6 at 1022). The NYC IEP recommended all general education academic classes with special education supports integrated into the setting. (*Id*. at 29). The NYC IEP recommended counseling support to be delivered in a separate setting outside of the general education classroom to address the development of coping skills and self-confidence. (*Id*.).

34. Mrs. R. testified that during Student's first few weeks at CMS, she and team members communicated very often (ECF 25-8 at 1234) and that Student was doing "okay" and having very minimal anxiety. (*Id*. at 1271).

35. School Psychologist, Catherine Napoletano, was responsible for implementing the socialemotional and social-behavioral goals with Student. (ECF 25-8 at 212, 417-18). Student's counseling sessions with Ms. Napoletano were scheduled for the morning as a way to proactively ease Student into her day. (*Id.* at 228). Student was also able to visit Ms. Napoletano outside of the scheduled times, which Student did a few times (*id* at 420), and if Student missed a session, Ms. Napoletano would offer her time when Student arrived at school. (*Id.* at 228).

36. On September 12, CMS administered a Star Reading assessment and a Star Math

assessment, on which Student scored in the above-average range in reading. (ECF 25-2 at 71; ECF 25-8 at 41-42). This performance was consistent with Ms. Baumeister's observations of Student's abilities in the English skills class and supported general education English class. (ECF 25-8 at 42).

37. Following the September 9 PPT meeting, CMS staff convened on multiple occasions per week to discuss Student's accommodations and progress. (ECF 38 at 86). The team monitored the Student's academic performance, communicated regularly, convened four PPT meetings in the span of five calendar months, and recommended programming changes to enhance the Student's access to and progress in the eighth-grade curriculum. (ECF 25-5 at 11, 42, 66; ECF 25-5 at 1; ECF 25-8 at 231-32; ECF 25-8 at 512-13).

**Attendance Issues and School Avoidance Plan**

38. CMS was not made aware of school avoidance issues by the NYC IEP or during the September 9 PPT meeting. (ECF 25-8 at 45). And, while the 2018 evaluation provided by Dr. Mukherjee noted that the student experienced some school avoidance, he reported that this stemmed from specific peer bullying at a prior private school. (ECF 25-6 at 38, 45).

39. The NYC IEP, which considered the report from Dr. Mukherjee, did not note any concerns of school avoidance or school refusal, nor did it recommend any strategies or specialized supports to address the Student's morning routine and tardiness. (ECF 25-6 at 24). Indeed, the NYC IEP noted that there was no need for a behavior intervention plan. (*Id.*). Rather, the NYC IEP attributed the Student's tardiness to school to her "difficulty with transitions and completing the morning routine in a timely fashion." (*Id*. at 23).

40. Ms. Baumeister testified that Student's attendance and related lack of work completion became an issue. (ECF 25-8 at 47-51). Ms. Napoletano testified that Student missed

over half of her counseling sessions because of absences or tardiness (*id.* at 423, 225-26), as Student only attended thirteen full days between the start of school and October 4, 2022. (ECF 1-1 at 12; *see also* ECF 25-5 at 8-9; ECF 25-4 at 44).

41. Student's science class teacher, Jesse Outhouse tried to support Student (ECF 38 at 69-70, 73, 76), but observed that her chronic tardiness and incomplete assignments affected her ability to learn and cooperate with his teaching strategies. (*Id*. at 69, 73, 76-77, 117-19; *see also* ECF 1-1 at ¶¶ 58, 60).

42. To adapt to and address this issue, in mid-September, CMS devised a school refusal plan (also referred to as a "school avoidance plan"). (ECF 25-8 at 60-61; ECF 25-8 at 229; ECF 25-8 at 736-37; *see also* ECF 25-5 at 83).

43. Ms. Napoletano contacted Parents to discuss CMS's school avoidance plan (ECF 25-4 at 1; ECF 25-8 at 457-58), which included a plan for nighttime and morning routines for Parents to implement at home. (ECF 25-8 at 230-32; *see also* ECF 25-5 at 83).  CMS provided Mrs. R with a copy of the plan on September 26, 2019 and invited feedback. (ECF 25-8 at 235; ECF 25-4 at 1).

44. Despite Mrs. R's agreement, the Parents did not cooperate in the implementation. (E.g., ECF 25-8, at 457-58).

45. Instead Parents reported Student was very anxious about school (ECF 25-4 at 1; ECF 25-8 at 142), the Student's private therapy was discontinued when she moved from New York City and did not begin again until January 2020. (*Id,* at 1270-71).

46. Ms. Baumeister did not observe the Student to be anxious in September or October (ECF 38 at 217), nor did she sense the Student was feeling increased anxiety. (ECF 25-8 at 65). Similarly, to Ms. Napoletano's recollection, Student never approached her upset about

9

any situation in school. (*Id*. at 423).

47. After two absences and on her eighth tardy day, Student came to CMS late because she was touring a private school, Norwalk Winston Prep. (ECF 25-8 at 1149-51*; see also* ECF 25-5 at 8-10).

48. Student's school attendance and her connection to her CMS team and peers plummeted once the Parents renewed the admissions process with Winston Prep for its Norwalk Campus. (ECF 25-5 at 406). The Student made a comment to Ms. Napoletano that her tardiness "didn't really didn't matter anyway." (ECF 25-8 at 421-22). Ms. Baumeister reported that the Student "wasn't completing work because she felt that she wasn't going to be [at CMS] much longer." (*Id*, at 65).

49. Despite these efforts, the issue remained and, on October 2, Student was absent from CMS so she could spend a shadow day at the Norwalk campus of Norwalk Prep. (ECF 25-5 at 8; ECF 25-8 at 44, 1153).

50. On October 4, the PPT convened to review and revise the Greenwich IEP, at which time the school avoidance plan was discussed and adopted by the PPT. (ECF 25-5 at 66-86).

51. Ms. Napolitano explained that she was working to build a relationship with the Student. (*Id.* at 67). She asked to collaborate with the family on strategies that they have observed that work at home, and added to the coping skills IEP goal and new IEP goal to address school attendance. (*Id.* at 67, 75-77; ECF 25-8 at 252, 520-21).

52. As an added support, the PPT included Tara Jogee, Teen Talk Counselor, who provided information to the Parents about additional supports available from community-based resources to support families and students. (ECF 25-5 at 66-67; ECF 25-8 at 67).

53. The team further revised the goals and objectives of the IEP to expressly address attendance and academic performance. (ECF 25-5 at 75-77). The plan called for, among other things, that if the Student is experiencing school avoidance/refusal, the parent will contact CMS to access support resources. (ECF 25-5 at 83-4). CMS staff will then call home and speak to the Student, providing specific expectations for Student, and if those interventions are not successful, parent would contact 2-1-1 (clinical support services available to CT families) and school staff would make a home visit if there were any prolonged periods of school refusal/avoidance. (*Id*.).

54. The IEP summary reflects that Parent shared that they had not yet engaged an outside therapist to support student as they were "in the process" of finding an outside therapist. (ECF 25-5 at 67). Again, however, Parents did not make any requests that were refused by the school team (*id*, at 69) and Parent and Student signed the plan on 10/4/19. (*Id*, at 83).

**Student Leaving CMS**

55. At the end of September the Student told Ms. Baumeister that she would be leaving CMS. (ECF 25-8 at 52). And by the time of the October 4 PPT, Student had already been accepted to Winston Prep's Norwalk campus. (ECF 1-1 at ¶ 73; ECF 25-4 at 61; ECF 25-8 at 1157). Dr. Riordan performed a psychoeducation assessment of the Student (ECF 25-2 at 98), unlike the comprehensive neuropsychological evaluations performed by Dr. Kornbleuth in 2016 (ECF 25-6 at 61) and Dr. Mukherjee in 2018. (*Id*. at 36).

56. The Norwalk Winston Prep Admissions Office provided a copy of Student's application. (ECF 25-8 at 1117-18; 1144-46). The application provided, however, is the 2019-2020 Academic Year application dated November 27, *2018*. (ECF 40 at 44-46; *supra* ¶ 15). The 2019-2020 Academic Year application is Student's *only* application to Winston Prep. (ECF 25-8

11

at 1152-53). Student did not submit a new application once attending CMS, instead, Student's application for the 2019-2020 academic year submitted in November 2018, and Student's application made while attending CMS are one in the same. (*Id*.)

57. On October 11, Parents gave formal notice to CMS that they were placing the Student at Norwalk Winston Prep. (ECF 25-2 at 96-97). Specifically, Plaintiffs' attorney sent a letter advising CMS that Parents intended to make a unilateral placement at Norwalk Winston Prep and to seek public funding of that placement. (*Id.*).

58. After Parents made the unilateral decision to place Student at Norwalk Winston Prep but prior to withdrawing Student from CMS (ECF 25-2 at 123), Parents requested clinical psychologist Dr. Riordan evaluate Student (ECF 25-8 at 278-79) as part of the admission process for Norwalk Winston Prep. (ECF 38 at 408).

59. Regardless, CMS staff continued to attempt to engage Student. (ECF 25-5 at 64). When Student did not show up to school on October 16 (ECF 25-5 at 8), Ms. Napoletano attempted to schedule a home visit, but Parents told staff not to come. (ECF 25-8 at 770-71).

60. Dr. Riordan did not have any communications with any members of CMS (ECF 25-8 at 280), but her colleague observed Student during classes at CMS on October 17. (*Id*. at 281-2).

61. The following morning Student did not report to school (ECF 1-1 at ¶¶ 124-26; ECF 25-5 at 8).

62. Of the 39 full school days between August 29 and October 31, Student fully attended CMS less than half of those days. (ECF 1-1 at 8, 12; ECF 25-5 at 8-10; ECF 25-4 at 44).

63. Dr. Riordan evaluated Student over the course of four days (ECF 25-8 at 278), but

did not recall reviewing any records from CMS. (*Id*. at 280). Based on the psychoeducational assessment administered by Dr. Riordan (ECF 25-2 at 98), the Student has strength in her vocabulary, is an avid reader, showed great skill in writing prose, and scored above average on vocabulary comprehension, average for fluid reasoning, and oral reading, and below average in certain areas of math computation and math problem solving. (ECF 25-5 at 106-111). She did not opine as to whether Student should be identified under OHI, ADHD, or another specific learning disability (ECF 25-8 at 310), but did ultimately provide a series of programmatic recommendations based on the assessment. (*Id*. at 310-11; *see also* ECF 25-5 at 101-04).

64. Dr. Riordan's recommendations included instruction in inferential and higher level reading comprehension, math, executive functions and social pragmatics. (ECF 25-5 at 101-03). Psychotherapy outside of school was also recommended to address the Student's anxiety and self-esteem. (*Id*, at 104).

**Norwalk Winston Prep**

65. Student's first day at Norwalk Winston Prep was October 29, 2019. (ECF 1-1 at ¶ 120; ECF 25-4 at 60; ECF 25-8 at 584, 1073).

66. Mr. Yanotti is employed at Norwalk Winston Prep as a counselor, Dean of Students, and Director of Summer Enrichment, but is an uncertified and unlicensed school counselor. (ECF 38 at 368; ECF 25-4 at 39).

67. Mr. Yanotti testified that Norwalk Winston Prep is not an approved special education school by the State of Connecticut. (ECF 38 at 407). He testified that Norwalk Winston Prep does not have instruction provided by certified or licensed teachers (ECF 38 at 368), nor does Norwalk Winston Prep implement IEPs. (*Id.* at 409).

68. Mr. Yanotti also testified that he did not participate in any PPT meetings at which

the Student's educational program was developed or revised. (ECF 38 at 409).

69. As such, while Norwalk Winston Prep was aware of Student's school avoidance issues, it did not establish a particular plan in response. (*Id.* at 383).

70. The alleged school avoidance issue did not resolve when the Student began at Winston Prep. (ECF 25-8 at 333). Mrs. R admitted that the Student would sit in the car in the parking lot for thirty to forty minutes while Norwalk Winston Prep staff tried to get her to come into the building. (ECF 25-8 at 1175). Dr. Riordan confirmed that the tardiness issue was caused by "her perfectionism and getting things ready in the morning … preparing her breakfast and her lunch." (ECF 25-8 at 341-42). Notably, these items were addressed in the CMS avoidance plan. (ECF 25-5 at 67; ECF 25-6 at 101-102). Mr. Yanotti testified that the school avoidance issues took until approximately February 2020 to improve. (ECF 38 at 380).

**CMS's Ongoing Efforts**

71. All the while, CMS continued to offer appropriate services for Student. It convened a PPT on November 1 (ECF 25-5 at 42-62) and another on January 14, 2020, (*id* at 11-41) at which time the PPT reviewed Dr. Riordan's evaluation report. (ECF 25-8 at 313-14).

72. Based on discussion and information reviewed at the meeting, the PPT proposed adding direct instructional support, through special education, in areas of reading comprehension and social skills. (ECF 25-5 at 12, 35). The PPT also recommended conducting a functional behavior assessment in the areas of classwork initiation and classwork completion based upon, among other things, the report from Norwalk Winston Prep that the student continues not to initiate or complete classwork. (ECF 25-5 at 12; ECF 25-8 at 432).

73. A request was made by the Parents' counsel for the Board to fund the placement at Norwalk Winston Prep, which was denied on the basis that the Board's IEP offered an

appropriate program. (ECF 25-5 at 12).

74.     The PPT convened again on July 21, 2020 to discuss the Student's services and goals for the 2020-2021 school year, which year involved transitioning to high school. (ECF 25-6 at 76-102; ECF 25-8 at 1326-27). The PPT recommended continued special education services to support the Student's development of skills, as outlined in the goals and objectives, in the area of planning and organization, math problem solving, higher order reading comprehension, self awareness, school attendance, coping skills, and friendship skills. (ECF 25-6 at 85-95). The PPT recommended that the Student work with special education teacher in a small group within a resource room setting to develop these skills through academic lab for 53 minutes per session nine times in an eight-day cycle. (*Id*. at 77, 99).

75.     Mrs. R attended the meeting and shared her concerns about the class sizes, size of the school, and schedules at Greenwich High School. (ECF 25-8 at 1327-28). The Parents received prior written notice that their request for payment for Norwalk Winston Prep again was refused by the PPT. (ECF 25-6 at 79).

76.     The PPT convened again in August to conduct an annual review. (ECF 25-7 at 1-36). Greenwich High School educators reviewed the available information regarding the Student, including the Student's educational record from CMS, the narrative summaries from Winston Prep, and report cards. (ECF 25-8 at 874).

77.     The school team recommended conducting updated academic, social and emotion assessments for the reevaluation of the student. (ECF 25-7 at 36). The PPT recommended that the Student receive direct support in the development of the academic skills in the resource room within a small group for 53 minutes, nine times within the eight-day high school schedule. (*Id*. at 27). In addition, the PPT recommended that the Student work directly with the school

psychologist or social worker, on an individual basis, two times in an 8-day cycle for a total of 41 minutes. (ECF 25-7 at 27). The PPT also recommended an additional accommodation for teachers to preview, predict and activate the Student's background knowledge to support the Student's comprehension. (*Id*. at 24).

78. The team, including the Parents, participated in discussion regarding triennial planning. (*Id*. at 1-2, 29-31). The parents were provided with a consent to conduct the reevaluation, which the Board recommended completing by September 5, 2021. (*See id.* at 1, 36).

79. The PPT recommended placement at Greenwich High School and discussed that specific course selections, including specific classes, to be informed by Greenwich High School placement tests. (ECF 25-8 at 986-87). Mrs. R. testified that she did not schedule placement testing at Greenwich High School "because we believed my daughter's placement was appropriate at Winston Prep." (ECF 25-8 at 1301).

80. Although Mrs. R later testified that she was not in agreement with the actions taken at the PPT meeting (ECF 25-8 at 1329-30), she did not ask for changes to Student's IEP in the August 2020 PPT meeting. (*Id*, at 1331).

81. The Parents again requested that the Board fund the unilateral placement, and that request was again denied because the Board was offering Student an appropriate program and placement and the Student did not require placement in a segregated setting to access her education. (ECF 25-7 at 2).

**Due Process Hearing**

82. On February 20, 2020, the Parents requested a due process hearing to address their claim that the Board had denied the Student a FAPE for the 2019-2020 academic year.

16

(ECF 1-1 at 3). Two additional due process requests were made, and those matters were consolidated by the Connecticut Department of Education into a single proceeding that began in September 2020. (ECF 38 at 26-28; ECF 1-1 at 3).

83. The hearing lasted nine days, spanned from September 2020 to February 2021 and comprised the testimony of eleven witnesses, including school faculty, staff, administrators, a clinical psychologist and Mrs. R. (ECF 1-1 at 3).

84. After hearing the extensive testimony and considering the exhibits, the IHO held in favor of the Board in a comprehensive memorandum that includes over two hundred factual findings. (*Id*, at 2-23). The IHO concluded that the Board identified the Student as eligible for special education and timely made available to the Student a comprehensive program and placement in the Greenwich Public Schools that provided the Student with a FAPE for the 2019-2020 and 2020-2021 school years, and that the Parents effectively thwarted the Board's ability implement that program. (*Id*, at 19-21). The IHO thus denied the Parents' due process challenge and their demand for tuition reimbursement for their unilateral placement of the Student. (*Id*. at 21).

**DEFENDANT**
**GREENWICH BOARD OF EDUCATION,**

By: */s/ Patrick M. Fahey*
    Patrick M. Fahey (ct13862)
    Andreana R. Bellach (ct21302)
    Shipman & Goodwin LLP
    One Constitution Plaza
    Hartford, CT 06109
    Tel.: 860-251-5000
    Fax: 860-251-5219
    pfahey@goodwin.com
    abellach@goodwin.com

    Abby R. Wadler (ct28051)
    Town Hall, Law Department
    101 Field Point Road, P.O. Box 2540
    Greenwich, CT 06836-2540
    Tel.: (203) 622-7876
    Fax: (203) 622-3816
    Abby.wadler@greenwichct.org

*Its Attorneys*